## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO


**SARAH MAE POWELL,**

      **Plaintiff,**

    **vs.**                                                                                       **Civ. No. 21-443 JFR**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security Administration,**

      **Defendant.**


## <u>MEMORANDUM OPINION AND ORDER[1]</u>

    **THIS MATTER** is before the Court on the Social Security Administrative Record (Doc.

21)[2] filed October 7, 2021, in connection with Plaintiff Sarah Mae Powell's *Motion for*

*Reinstatement of ALJ Burke's Bench Decision Dated February 13, 2020* ("Motion for

Reinstatement") (Doc. 26), and Plaintiff's *Motion to Reverse the Administrative Law Judge [sic]*

*(ALJ) Unfavorable Decision Dated September 14, 2020 or Alternatively to Remand the Case*

*Back to the Administrative Law Judge* (Doc. 27) ("Motion to Remand"), both filed on December

21, 2021.  The Social Security Commissioner filed a consolidated brief responding to both

motions on March 24, 2022.  Doc. 33.  Plaintiff filed corresponding replies on April 22, 2022.

Docs. 34, 35.  The Court has jurisdiction to review the Commissioner's final decision under 42

U.S.C. §§ 405(g), 1383(c).  Having meticulously reviewed the entire record and the applicable

law, and being otherwise fully advised in the premises, the Court finds that Plaintiff's Motion for

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment in this case.  Docs. 12, 14, 15.

[2] Hereinafter, the Court's citations to the Social Security Administrative Record (Doc. 16), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

Reinstatement and her Motion to Remand are not well-taken.  Therefore, they are **DENIED**, and the Commissioner's final decision is **AFFIRMED.**

## I. BACKGROUND

Plaintiff alleges that she became disabled on February 19, 2016, her alleged onset date, at the age of 50 years and five months, because of anemia, depression, degenerative disc disease, diabetes, glaucoma, hypothyroidism, migraines, plantar fasciitis, sleep apnea, and tachycardia. Tr. 323, 326.  Prior to her alleged onset date, Plaintiff worked as a school crossing guard for just over one year, and as a school bus driver for nine years.  Tr. 328.  She completed high school in 1983, and received specialized job training for her position as a school bus driver.  Tr. 327. Plaintiff ceased working on her alleged onset date "[b]ecause of her condition(s)" and "other reasons."  Tr. 327.  Plaintiff applied for Social Security Disability Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 *et seq.*, on June 21, 2017.  Tr. 125, 295. Her application was denied on November 8, 2017.  Tr. 186.  It was again denied at reconsideration on May 15, 2018.  Tr. 191.

### A.      The February Hearing

Upon Plaintiff's request, Administrative Law Judge ("ALJ") James Burke held a hearing on February 13, 2020.  Tr. 16, 199.  Plaintiff appeared with Attorney James Rubin[3] at the hearing.  Tr. 100.  ALJ Burke took testimony from Plaintiff and a vocational expert at the hearing.  Tr. 100-101.  At the close of the hearing, ALJ Burke stated that he was "prepared to

---

[3] Mr. Rubin also represents Plaintiff in the instant proceedings.  Doc. 2 at 4.

issue . . . a judgment in [Plaintiff's] favor" and that he would "read this . . . bench decision into

the record" "pursuant to HALLEX I-5-1-17."[4]  Tr. 116.  His oral decision was as follows:

> [Plaintiff's] severe impairments are degenerative disc disease of the lumbar spine;
> depression; somatic symptom disorder [and] status-post spinal fusion. . . . [T]he
> panic attacks . . . are not . . . severe.  And the reason for that is they haven't lasted
> for a year and those conditions have to last for a year.
>
> . . . .
>
> [M]ild limitations in understanding, interacting, and concentrating; and moderate
> limitations in adaptation.
>
> . . . .
>
> [Plaintiff] has had less than a completely full range of sedentary.  She can stand for
> about 15 minutes, sit for about 15 minutes.  She lies down at least once a day in the
> afternoon, and sometimes up to three times for up to an hour. . . . I find that she can
> lift – consistent with a sedentary R[esidual] F[unctional] C[apacity], she can lift ten
> pounds occasionally, and less than ten pounds frequently.  Occasionally engage in
> other postural changes except that she can't bend down.  The testimony and medical
> evidence are consistent. . . . I find that even if she had a full range of sedentary, she
> would grid out at [20 C.F.R. Part 404, Subpart P, Appendix 2, Rule] 201.14.
>
> . . . .
>
> I find . . . past relevant work which she is unable to perform . . . unskilled and
> semiskilled, which do not transfer.  A direct application of [20 C.F.R. Part 404,
> Subpart P, Appendix 2, Rule] 201.14 would get us to . . . a finding of disability. . .
> . And I note that because this is a five step-determination, . . . [Plaintiff] has a burden
> of proof at all five steps.  But, at step five, the [Social Security Administration
> ("SSA")] has a limited burden of showing that there are other jobs in the economy
> that . . . [Plaintiff] can perform.  Given her age, education, work experience, and
> [R]esidual [Functional] [C]apacity, I find that . . . [Plaintiff] has met her burden of
> proof, but the [SSA] has not met its.  And that's apparent from the promulgation of
> the grid rules which do place . . . [Plaintiff] squarely within the disabled category.

---

[4] HALLEX I-5-1-17 has been replaced by I-2-8-19, 2016 WL 6609682 (Nov. 7, 2016) ("Oral Decisions on the Record
(Bench Decisions)").  *HALLEX Volume I Transmittal No. I-2-194*, Social Security Administration (Nov. 7, 2016),
https://www.ssa.gov/OP_Home/hallex/TS/tsi-2-194.html.

Tr. 117-19.  ALJ Burke transposed his on-record findings regarding Plaintiff's disability status onto an ALJ Bench Decision Checklist,[5] which he signed and marked as an exhibit.  Tr. 39-40, 119.  Therein, he memorialized the oral findings he made from the bench during the hearing.

On May 5, 2020, Plaintiff's counsel sent a letter to ALJ Burke inquiring about his bench decision.  Tr. 442.  In this letter, he noted that ALJ Burke had issued a "fully favorable decision" from the bench, and expressed his understanding that he would be receiving a separate document reflective of that decision.  Tr. 442.  Apparently, the only documentation he had received from the hearing was the ALJ Bench Decision Checklist, signed by ALJ Burke and made part of the record.  Tr. 446-49.

**B.    The August Hearing**

Plaintiff received notice that another hearing on her DIB application would take place before a different ALJ, Jennifer M. Fellabaum, on August 20, 2020.[6]  Tr. 259-263.  Plaintiff was again represented by Mr. Rubin at the hearing.  Tr. 121.  ALJ Fellabaum took testimony from Plaintiff and a vocational expert at the hearing.  Tr. 121-22.  On September 14, 2020, ALJ Fellabaum issued an unfavorable decision.  Tr. 13-15.  In her decision, she found that Plaintiff's severe impairments were bilateral carpal tunnel syndrome, bilateral plantar fasciitis, degenerative disc disease of the lumbar spine, depression, left ventricular hypertrophy, obesity, and somatoform disorder, and that Plaintiff's non-severe impairments were chronic anemia, chronic venous insufficiency, diabetes mellitus, diabetic neuropathy, diabetic retinopathy, gastroesophageal reflux disorder, glaucoma, headaches, hyperlipidemia, hypothyroidism, obstructive sleep apnea, restless legs syndrome, and slow gastric emptying.  Tr. 19.  She further

---

[5] *See* Richard C. Ruskell, Social Security Disability Claims Handbook § 9:69 (Thomas Reuters 2022).

[6] The hearing before ALJ Fellabaum took place telephonically due to the COVID-19 pandemic.  Tr. 16.

found that Plaintiff had a mild limitation in interacting with others, and in understanding, remembering, or applying information, and that Plaintiff had a moderate limitation in adapting or managing herself, and in concentrating, persisting, and maintaining pace.  Tr. 21-22.  ALJ Fellabaum found that Plaintiff had the RFC

> to perform light work as defined in C[.]F[.]R[. §] 404.1567(b) except she could occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs; could never climb ladders, ropes or scaffolds; could never be exposed to unprotected heights, hazardous machinery, or concentrated exposure to extreme cold or vibration; could occasionally use foot controls bilaterally; and could frequently finger, handle, and feel bilaterally.  [Plaintiff] could sit for 30 minutes at a time, and then would need to get up and stand or walk for 5 minutes before she could sit again.  She could stand or walk for a maximum of 30 minutes at a time, and then would need to sit for at least 15 minutes before she could stand or walk again.  [Plaintiff] could perform detailed but not complex tasks, with no fast-paced production work; and could tolerate occasional changes to the work setting.

Tr. 22.  Finally, ALJ Fellabaum found that while Plaintiff's RFC rendered her unable to perform her past relevant work, "there were jobs that existed in significant numbers in the national economy that . . . [Plaintiff] could have performed."  Tr. 29.  As per the Dictionary of Occupational Titles ("DOT"), these jobs were: a cashier,[7] a mail clerk,[8] and a marker.[9]  Tr. 30.  Based upon these determinations, ALJ Fellabaum concluded that Plaintiff was not disabled under the Act "at any time" from her alleged onset date through her date last insured, March 31, 2019.  Tr. 30-31.

Plaintiff requested the Appeals Council review ALJ Fellabaum's decision.  Tr. 1.  She also submitted additional treatment records not considered by ALJ Fellabaum as support for her request for review.  Tr. 2.  The Appeals Council did not exhibit this additional evidence.  Tr. 2.

---

[7] DOT 211.462-010, 1991 WL 671840 (Jan. 1, 2016) ("Cashier II").

[8] DOT 209.687-026, 1991 WL 671813 (Jan. 1, 2016) ("Mail Clerk").

[9] DOT 209.587-034, 1991 WL 671802 (Jan. 1, 2016) ("Marker").

On March 12, 2021, it denied Plaintiff's request for review, rendering ALJ Fellabaum's

unfavorable decision the final decision of the Commissioner.  Tr. 1; *see Naud v. Astrue*, 870 F.

Supp. 2d 1183, 1185 (D. Colo. 2012) ("The Appeal's Council's denial of review means that the

ALJ's decision becomes the final decision of the Commissioner.").  On May 11, 2021, Plaintiff

timely filed a Complaint in this Court seeking judicial review of the Commissioner's final

decision.  Doc. 2.

## II. APPLICABLE LAW

**A.**      **Disability Determination Process**

An individual is considered disabled if she is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial work activity is work

activity that involves doing significant physical or mental activities," even when it is performed

less often, for less money, or with less responsibility, than in the past.  20 C.F.R. § 404.1572(a).

"Gainful work activity is work activity" done "for pay or profit. . . . [I]t is the kind of work

usually done for pay or profit, whether or not a profit is realized."  20 C.F.R. § 404.1572(b). To

determine whether a person satisfies this criteria, the Commissioner has adopted the familiar

five-step sequential analysis as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have impairment(s) or a combination of impairments that is severe and meets the duration requirement, she is not disabled.

> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [her physical and mental] limitations." 20 CFR § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of a claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Hum. Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

**B.      Standard of Review for Disability Decisions**

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Hamlin*, 365 F.3d at 1214 (internal quotation marks and citation omitted).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (internal quotation marks and citation omitted).  Likewise, "[e]vidence is not substantial if it . . . constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  The reasons underlying the ALJ's decision must be "articulated with sufficient particularity to allow for judicial review." *Gorian v. Colvin*, 180 F. Supp. 3d 863, 868 (D.N.M. 2016).  Further, the ALJ's decision must "apply the correct legal standard" and supply "a sufficient basis to determine that appropriate legal standards have been followed." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (internal quotation marks and citation omitted). The Court does not "reweigh the evidence" or impose its judgment in place of the Commissioner's. *Hamlin*, 365 F.3d at 1214 (internal quotation marks and citation omitted).

### III. ANALYSIS

The Court first addresses Plaintiff's Motion for Reinstatement, in which the Court is confronted with a single issue: Is ALJ Burke's Bench Decision Checksheet a final, reviewable decision, such that it should be instated as the final decision in this case and entitle Plaintiff to an award of DIB because the Commissioner never appealed it?  Doc. 26 at 5.  The Court proceeds to address Plaintiff's Motion to Remand, which presents four additional questions: (1) Did ALJ Fellabaum err by failing to consider whether Plaintiff was disabled "through the recovery time" associated with an operation that occurred about one month before her date last insured; (2) Was the additional evidence that Plaintiff submitted to the Appeals Council properly considered; (3)

Is ALJ Fellabaum's decision supported by substantial evidence; and (4) Should ALJ Fellabaum

have considered finding a closed period of disability?  Doc. 28 at 9, 15, 17-18.

**A.**  **Motion for Reinstatement**

  *1.*  *Legal Standard for Wholly Favorable Oral Bench Decisions*

  Pursuant to the SSA's Program Operating Manual Systems ("POMS"),[10] an ALJ may

orally issue a "wholly favorable" decision from the bench as "an alternative procedure for the

ALJ to use in issuing the written decision."  POMS DI 42010.021(A).   All of the following

criteria must be met for this procedure to apply:

- The case is an initial adult disability case under Title II and/or Title XVI of the
  . . . Act, or a claim for benefits as a disabled widow, widower, or surviving
  divorced spouse under Title II of the Act, or a claim for payments as a child
  under age 18 under Title XVI of the Act.

- Drug addiction or alcoholism is not an issue in the determination of disability.

- The case does not involve a Title II disabled adult child, a Title XVI age-18
  redetermination, a continuing disability review, or a closed period of disability.

- The ALJ decides at the hearing that a wholly favorable decision is warranted.

- There are no changes to the findings of fact or the rationale for the ALJ
  decision between the time the oral (bench) decision is made at the hearing and
  the written decision is issued.

POMS DI 42010.021(C).  The ALJ is required to prepare a written decision.  20 C.F.R §

404.953(a); *see also Jackson v. Comm'r of Soc. Sec.*, No. 17-CV-10060, 2018 WL 1061695, at

*2 (E.D. Mich. Feb. 27, 2018).  If the ALJ enters a wholly favorable oral decision into the

hearing record, he "may issue a written decision that incorporates the oral decision by reference."

20 C.F.R. § 404.953(b).

---

[10] Reviewing courts afford deference to SSA's "interpretations stated in the POMS unless they are 'arbitrary, capricious, or contrary to law.'"  *Lee v. Colvin*, 631 F. App'x 538, 541 n.1 (10th Cir. 2015) (quoting *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999)).

2.      *The Court Cannot Reinstate the Bench Decision Because ALJ Burke Did Not Issue a Final, Written Decision*

Plaintiff argues that "ALJ Burke's decision should be reinstated" because he "fully completed" his wholly favorable oral bench decision.  Doc. 26 at 3, 5.  The Commissioner counters Plaintiff's position by arguing that no reviewable decision exists.  Doc. 33 at 6. Specifically, the Commissioner maintains that while ALJ Burke offered an oral decision wholly in Plaintiff's favor from the bench, the Bench Decision Checklist he entered suffered from "issues" requiring remediation.  Doc. 33 at 6-7.  For the reasons that follow, the Court is not persuaded by either parties' argument; however, the Court agrees with the Commissioner's argument insofar as it is premised on the lack of a reviewable decision.

As noted above, this Court's jurisdiction extends to review final decisions of the Commissioner:

> Any individual, after any final decision of the Commissioner . . . made after a hearing to which [s]he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to h[er] of notice of such decision or within such further time as the Commissioner . . . may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides.

42 U.S.C. § 405(g).  The unusual procedural circumstances presented by this case render the jurisdiction afforded this Court by this statute exceedingly material to the resolution of Plaintiff's Motion to Reinstate.  In Plaintiff's view, the final decision necessary to compel this Court's review is the Bench Decision Checklist.  Doc. 26 at 5.  The Court understands Plaintiff's position, and notes that there is meager precedent and ample room for confusion in this area— problems not helped by the explanation ALJ Fellabaum articulated in her written decision for the path charted in this case following Plaintiff's hearing before ALJ Burke.  However, a scrupulous read of the applicable policies and regulations and the authority available supports the

Commissioner's position that ALJ Burke did not issue a final, written decision, and thus no review of his actions can be conducted by the Court.

ALJ Fellabaum offered the following explanation of the mechanics that brought this case before her for the August 2020 Hearing:

> At a hearing on February 13, 2020, [ALJ] . . . Burke orally issued a bench decision. However, he did not complete a [B]ench [D]ecision [C]hecklist that fully reflected the oral decision announced at the hearing, as required by HALLEX I-2-8-19 paragraph B3.  After hearing, [ALJ] Burke became unavailable to issue the final decision in this matter.  In the absence of a fully completed [B]ench [D]ecision [C]hecklist, or written approval from [ALJ] Burke to amend the checklist and finalize the decision, HALLEX I-2-8-40 prohibits me in my role as the Hearing Office Chief Administrative Law Judge [("HOCALJ")] from signing the final decision on his behalf.  Therefore, I reviewed the case pursuant to [HALLEX] I-2-1-55 paragraph B, and reassigned the case, with the concurrence of Regional Chief Administrative Law [("RCALJ")] Judge Sherry Thompson.  After reviewing the evidence in the file, I determined that a new hearing was required to render a decision.

Tr. 16.  HALLEX I-2-8-19(B)(3) provides that "[a]fter a hearing in which the ALJ issued an oral decision, the ALJ will usually issue a written notice of the oral decision that incorporates by reference the findings of fact and the reasons stated orally at the hearing."  2016 WL 6609682, at *3 (Nov. 7, 2016); *see also* POMS DI 12010.041(D) ("If the ALJ uses the oral (bench) decision procedures, the ALJ will send a Notice of Decision – Fully Favorable.  That notice will include the language 'I announced the basis for my decision at the hearing . . . . I adopt here those findings of fact and reasons.'").  It further provides that "an ALJ cannot use the incorporation-by-reference procedure if he . . . determines after the hearing that any of the findings of fact or reasons for the decision entered into the record at the hearing have changed."  *Id.*  In the latter case, "the ALJ will: Proffer the changes and the supporting exhibits of record to the claimant and appointed representative, if any, if the contemplated changes make the written decision less favorable than announced during the hearing."  *Id.*  The ALJ must also "[i]ssue a written decision

that sets forth the findings of fact and the reasons for the decision, including any changes in the findings and reasons stated at the hearing." *Id.*

With respect to the Bench Decision Checklist, it is unclear which portion of HALLEX I-2-8-19(B)(3) ALJ Fellabuam believed was inadequately completed by ALJ Burke, as she noted no specific deficiencies in her explanation. *See* Tr. 16. A Bench Decision Checklist becomes a record exhibit at the time of the hearing; it is "a document that sets forth the key data, findings of fact, and narrative rationale" underlying the ALJ's wholly favorable decision. 20 C.F.R. § 404.953(b). The Court's review of the Bench Decision Checklist and the transcript of the hearing reveal no glaring dissimilarities of consequence, the parties do not direct the Court to any, and ALJ Fellabaum offered no specificity in her assessment that the checklist did not "fully reflect the oral decision announced at the hearing." Tr. 16. *Compare* Tr. 39-40, *with* Tr. 117-19. In any event, because this fact does not contribute to the ultimate resolution of Plaintiff's Motion to Reinstate, the Court does not dwell on it further.

The decisive issue here is the absence of a final decision that this Court is empowered to review. 20 C.F.R. § 404.953(a) is *generally* applicable to the decisions of ALJs and *requires* a written decision. *Accord Jackson*, 2018 WL 1061695, at *2. This requirement holds regardless of whether or not the ALJ elects to issue a wholly favorable bench decision pursuant to 20 C.F.R. § 404.953(b). *See* Ruskell, *supra*, § 3.15 ("SSA issued final rules authorizing . . . oral bench decisions in wholly favorable decisions. The final rules do not change the requirement that the ALJ issue a written decision." (citation omitted)). Plaintiff's confusion, undoubtedly compounded by the explanation ALJ Fellabaum articulated in her written decision, lies with the language employed in 20 C.F.R. § 404.953(b), specifically whether the "document that sets forth

the key data, findings of fact, and narrative rationale for the decision" is itself "the written decision that incorporates the oral decision by reference."  The answer is no.

HALLEX I-2-8-19(A)(1) provides that, pursuant to 20 C.F.R. § 404.953(b), an ALJ "may enter a fully favorable oral decision . . . into the record of the hearing proceedings, and *thereafter issue a written decision*."  2016 WL 6609682, at *1 (emphasis added).  HALLEX I-2-8-19(B)(1) states: "When an ALJ believes an oral decision may be appropriate, the ALJ will generate an oral decision checksheet from the Document Generation System.  As needed, the ALJ may choose to complete certain portions of or the entire checksheet prior to the hearing."  2016 WL 6609682, at *1.  And finally, HALLEX I-2-9-19(B)(2)(c) requires the ALJ to "add the completed checksheet as an exhibit to the record" once he articulates "an oral decision on the record during the hearing."  2016 WL 6609682, at *3.

While these guidelines indicate that the Bench Decision Checksheet is a tool the ALJ is required to use to conduct the hearing, and that it becomes a part of the record, nothing in them indicates that the checksheet itself becomes the final written decision required of the ALJ or a substitute therefor.  *Cf. Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK)*, 275 F.R.D. 551, 557 (D.N.M. 2011) (noting that courts are "reluctant" to read language into rules "that is not there" and "that the drafters did not write").  Moreover, any uncertainty on this point that may be attributable to the language of HALLEX I-2-8-19(B)(3) that requires "a written decision that sets forth the findings of fact and the reasons for the decision" in instances where the ALJ "determines after the hearing that any of the findings of fact or reasons for the [wholly favorable oral bench] decision entered into the record at the hearing have changed" is resolved without difficulty.  2016 WL 6609682, at *3.  Close reading reveals that the ALJ "*may* . . . issue a written decision that incorporates the wholly favorable oral bench decision by reference" if

circumstances have not changed after the hearing, HALLEX I-2-8-19(A)(1), 2016 WL 6609682, at *1 (emphasis added), but that this procedure may not be used, and the more exhaustive, traditional written decision is required, when the ALJ decides that his wholly favorable oral bench decision must be changed.  HALLEX I-2-8-19(B)(3), 2016 WL 6609682, at *3; *see also* Ruskell, *supra*, § 3.15 ("If the ALJ determines after the hearings that any of the findings or reasons stated at the hearing must b[e] changed, he . . . must issue a full, written decision."). Again, nothing in this text obviates the need for a written decision separate and apart from the Bench Decision Checklist.  This point is further supported by the Note that follows HALLEX I-2-8-19(B), which leaves open the possibility that the ALJ may issue a wholly favorable oral bench decision, but may still elect not to issue a truncated written decision that incorporates his oral findings and reasons by reference and instead issue a traditional written decision.  *See* 2016 WL 6609682, at *3.

Finally, the Court takes guidance from the Administrative Review Process undertaken by SSA when it sought to amend the rules governing wholly favorable oral bench decisions. Therein, SSA offered a detailed explanation of the process of issuing written decisions in cases after the ALJ has rendered a wholly favorable, expedited bench decision:

> [I]f an ALJ enters a wholly favorable, oral decision into the record of a hearing, the ALJ may fulfill the existing requirement for issuing a written decision that gives the findings of fact and the reasons for the decision by issuing a written decision that incorporates by reference the findings of fact and the reasons stated orally at the hearing.
>
> . . . .
>
> [W]here the ALJ determines that a change in the oral findings or reasons stated at the hearing is required, the ALJ must issue a written decision that sets forth the findings of fact and the reasons for the decision under our existing procedures for issuing written decisions.  We are precluding use of the incorporations-by-reference procedure in these instances because it could be confusing for claimants and for our personnel who must subsequently effectuate or review the ALJ's decision.

. . . .

When the circumstances for using the incorporation-by-reference procedure are present, the ALJ is not required by these rules to rely on that procedure to give the findings of fact and the reasons for his or her decision. The ALJ retains the discretion in these circumstances to issue a decision in the short-form or full-length format.  Our intent is to provide ALJs with a range of useful options for issuing wholly favorable decisions.  Under these final rules, an ALJ who makes a wholly favorable oral decision at the hearing is required to include in the record, as an exhibit entered into the record at the hearing, a checksheet that sets forth key data, findings of fact, and narrative rationale for the decision.  Preparation of the checksheet will aid the ALJ in determining if a wholly favorable decision is warranted.  When the ALJ decides not to state an oral decision, the checksheet will constitute a working paper of the ALJ and will not be entered into the record.  The checksheet will assist our staff in preparing a decision when an oral decision is stated but the incorporation-by-reference procedure is not used. The checksheet will also provide information needed by our personnel who implement or evaluate decisions that rely on the incorporation-by-reference procedure.

. . . .

Our implementing instructions will also provide that the written decision issued by an ALJ when the incorporation-by[-]reference procedure is used shall be brief and shall be issued as an integral part of the notice of decision that we issue.

Administrative Review Process; Incorporation-by-Reference of Oral Findings of Fact and Rationale in Wholly Favorable Written Decisions.  69 Fed. Reg. 61594, 61595-96 (Oct. 20, 2004) (to be codified at 20 C.F.R. pts. 404, 416).  This explanation further evinces SSA's intent that the Bench Decision Checksheet acts as a tool[11] in crafting the final, written decision, whether in truncated or traditional form, but does not itself constitute a final, written decision.

Having disentangled this framework, the remainder of ALJ Fellabuam's explanation in her written decision is more readily understood.[12]  HALLEX 1-2-8-40 discusses the procedures

---

[11] The Court is not alone in its assessment that the Bench Decision Checksheet is a tool for ALJs to use when issuing wholly favorable oral bench decisions.  As one Social Security commentator noted: "Companion HALLEX instructions include a [B]ench [D]ecision [C]heck[]sheet to help the ALJ include all required elements in the oral decision."  Peter S. Young, *Wholly Favorable Bench Decisions*, Current Soc. Sec. News, Jan. 2005, at 4.

[12] Given ALJ Fellabuam's citations to certain HALLEX provisions, it appears she may have been using a version of the manual that predated some updates and recompilation.  *See HALLEX Volume I Transmittal No. I-2-223*, Social Security Administration (Apr. 9, 2019), https://www.ssa.gov/OP_Home/hallex/TS/tsi-2-223.html.  For simplicity, the Court references the current version of HALLEX.

for when a hearing was conducted by an ALJ who becomes unavailable for issuance of a decision. 1993 WL 643064 (Apr. 9, 2019).  However, it applies only where "an ALJ approved a final draft decision but is unavailable to sign the decision."  *Id.*  There is no indication in the record that ALJ Burke had finalized a draft decision.  HALLEX I-2-1-55(F)(2) contemplates the appropriate procedure in such situations; it states: "When an ALJ has held a hearing but has not yet approved a draft decision, the HOCALJ or other management ALJ may reassign the case with concurrence of the RCALJ."  1993 WL 642977 (Apr. 9, 2019).  The Note accompanying this section states that, following reassignment, "if the ALJ is unable to issue a fully favorable decision based on the information before . . . her, or the ALJ requires more information to make a decision, the ALJ will assess whether another hearing is necessary."  *Id.*  According to ALJ Fellabaum's explanation in her written decision, these procedures were followed in this case.  Tr. 16.

For all these reasons, the Court is without a basis to afford the relief Plaintiff requests in her Motion to Reinstate, because ALJ Burke did not issue a final, written decision that is reviewable by this Court as required by the applicable regulations.  Therefore, it is **DENIED**, and the Court shifts its focus to her Motion to Remand.

**B.     Motion to Remand**

*1.     Legal Standard for Receiving DIB under Title II of the Act*

A claimant seeking DIB under Title II of the Act must establish that she was under a disability between her alleged onset date and the date last insured.  *Dominguez v. Apfel*, 55 F. Supp. 2d 1172, 1179 n. 4 (D. Kan. 1999).  Indeed, according to the applicable SSR, to successfully pursue DIB, a claimant is required to demonstrate that "she met the statutory definition of disability before . . . her insured status expired, and . . . she currently meets the

statutory definition of disability, or . . . her disability ended within the 12-month period before

the month that he or she applied for benefits." Social Security Ruling ("SSR") 18-1p, 2018 WL

4945639, at *5 (Oct. 2, 2018).[13]

2.      *The ALJ Did Not Err by Considering Only the Evidence Pertaining to Plaintiff's*
        *Condition on or before the Date Last Insured*

        Plaintiff's alleged onset date was February 19, 2016, and the date she was last insured

was March 31, 2019.  Tr. 17.  Neither party disputes this point, and ALJ Fellabaum's decision

indicates that this is the time period that guided her disability determination.  Tr. 17.  At the

center of Plaintiff's argument here is a posterior spinal fusion she underwent on February 27,

2019.  Doc. 28 at 9.  Specifically, Plaintiff maintains that ALJ Fellabaum erred by failing to

consider whether she was disabled from her alleged onset date "through the recovery time

associated" with her posterior spinal fusion.  Doc. 28 at 9.  The Court cannot agree.

        The evidence relevant to a DIB claim is generally limited to that bearing on a claimant's

condition on or before the insurance expiration date.  *Candelario v. Barnhart*, 166 F. App'x 379,

382 (10th Cir. 2006).  "The Tenth Circuit has made clear 'the relevant analysis is whether the

claimant was actually disabled prior to the expiration of her insured status.'"  *Beck v. Saul*, No.

19-CV-401, 2020 WL 1703333, at *6 (D.N.M. Apr. 8, 2020) (quoting *McKinney v. Barnhart*, 62

F. App'x 284, 285-86 (10th Cir. 2003)).  "As such, the Tenth Circuit has found that evidence

dated after the date last insured is generally not relevant to an ALJ's finding of disability on or

before the date last insured."  *Id.*

        Plaintiff does nothing to advance her argument aside from setting forth her history of

degenerative disc disease and stating that, in light of this history, she "had no real choice but to

---

[13] In the interest of clarity, the Court notes that SSR 18-1p, replaces SSR 83-20, 1983 WL 31249 (Jan. 1, 1983), which
was rescinded on October 2, 2018.  2018 WL 4945639, at *1.

undergo" a posterior spinal fusion, and presenting ALJ Fellabaum's summary of Plaintiff's other medical issues. Doc. 28 at 10-15. She does not cite what evidence she claims ALJ Fellabaum should have considered. Significantly, the Court's review of ALJ Fellabaum's decision indicates that she did in fact consider medical records related to Plaintiff's condition following her posterior spinal fusion. Tr. 26. Even still, the Court notes that evidence that post-dates the relevant time period is of negligible use for purpose of a disability determination. *See Beck*, 2020 WL 1703333, at *6 ("'Evidence of disability obtained after the expiration of insured status is generally of little probative value.'" (quoting *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004)). For these reasons, the Court rejects Plaintiff's argument in this regard, and next analyzes her position that ALJ Fellabaum's decision is not supported by substantial evidence, which she centers entirely on ALJ Fellabaum's evaluation of certain medical opinion evidence.

      *3.    Legal Standard for the ALJ's Evaluation of Medical Opinion Evidence*

      The ALJ evaluates the persuasiveness of medical opinions based on: (1) the degree to which the opinion is supported by objective medical evidence and supporting explanation; (2) how consistent the opinion is with other evidence in the record; (3) the source's treating relationship with the claimant (i.e., how long/frequently the source treated the claimant and for what purpose); (4) whether the source was specialized on the impairment on which she is opining; and (5) any other factor tending to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). "The most important factors . . . are supportability . . . and consistency." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). An ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

In considering the persuasiveness of medical opinions, the ALJ "must discuss the weight [s]he assigns." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The ALJ need not discuss each factor articulated in the regulations; rather, the ALJ must merely explain her weighing decision with sufficient specificity so as to be capable of review. *See Langley*, 373 F.3d at 1119. Put differently, if the ALJ rejects an opinion, she "must then give 'specific, legitimate, reasons for doing so.'" *Id.* (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

4.     *ALJ Fellabaum's Decision is Supported by Substantial Evidence*

As the basis for her position that ALJ Fellabaum's decision is not supported by substantial evidence, Plaintiff attacks her reliance on the opinions of Drs. Edward S. Bocian and Leah Holly, which ALJ Fellabaum found "persuasive." Doc. 28 at 18. ALJ Fellabaum summarized her use of their opinions by noting that each doctor, at different times,

> found . . . [Plaintiff] capable of light work, with postural and environmental limitations. [Plaintiff] needed to sit for six hours if allowed to stand and stretch at the worksite for a few moments every 30 to 40 minutes and limited to occasionally push/pull with lower extremities due to back pain. These administrative findings are supported through explanations and consistent with the evidence from medical and other sources. They are persuasive, except that . . . [Plaintiff] could never climb ladders, ropes, or scaffolds due to side effects from her medications.

Tr. 28 (internal citations omitted). Plaintiff also takes issue with the weight ALJ Fellabaum assigned the opinions of Drs. Mark McGaughey, Richard Sorenson, and James W. Schutte. Doc. 28 at 18. Drs. McGaughey and Sorensen, at different times, opined, in relevant part, that Plaintiff "had moderate limitations in abilities to understand and remember detailed instructions, and respond appropriately to changes" and that she "had the capacity to perform detailed but not complex instructions." Tr. 28. ALJ Fellabaum found these opinions "partially persuasive," and that "the combination of [Plaintiff's] mental impairments with the medication side effects

support moderate limitation in concentration and pace." Tr. 28.  With respect to Dr. Schutte,

ALJ Fellabaum described her assessment of his opinion as follows:

> Dr. Schutte, who performed a consultative psychological evaluation . . . , reported
> . . . [Plaintiff]'s attention and concentration were measured to be in the average
> range.  With respect to adaptive behavior, she had some reported limitations in
> home living and work.  Dr. Schutte opined that . . . . [Plaintiff]'s ability to
> understand and remember basic instructions did not seem impaired.  Her ability to
> concentrate and persist at tasks of basic work seemed mildly impaired due to
> somatic symptom disorder and depression.  Her ability to interact with the general
> public and/or co-workers seemed mildly impaired due to depression.  Her ability to
> adapt to changes in the workplace seemed moderately impaired due to depression
> and somatic symptom disorder.  Dr. Schutte's opinion of mild limitations in several
> areas and moderate limitation only in adaptation is partially persuasive.  It is
> supported by his mostly normal findings on mental status examination, apart from
> mildly constricted affect and brief tearfulness, and consistent with treatment notes
> showing some complaints of depression but no specialized mental health treatment.
> However, the combination of her mental impairments with the medication side
> effects support moderate limitation in concentration and pace.

Tr. 28 (internal citations omitted).  In sum, Plaintiff argues that the foregoing evidence is

"overwhelmed" by other evidence in the record.  Doc. 28 at 18.  However, the only evidence she

points to is her severe and non-severe impairments, listed above, and ALJ Fellabaum's

discussion of her obesity.  Doc. 28 at 18-19.

Having conducted a review of the medical evidence in the record, the Court is not

convinced that ALJ Fellabaum's decision is "overwhelmed" by contrary evidence.  To begin, a

diagnosis of an impairment, without more, "is not evidence of functional limitations." *Waterman*

*v. Astrue*, No. 07-1317, 2009 WL 662629, at *4 (D. Kan. Mar. 13, 2009).  Indeed, the

evidentiary value of medical diagnoses lies in the functional limitations resulting from those

diagnoses that prevent an individual from engaging in employment.  *See Bernal v. Bowen*, 851

F.2d 297, 301 (10th Cir. 1988).  Similarly, it is clear from ALJ Fellabaum's discussion of

Plaintiff's obesity that she considered the impact of obesity on Plaintiff's other impairments:

"[Plaintiff]'s excess weight may have contributed to her lower back and bilateral foot/heel pain

and related function limitations." Tr. 20.  This is a sufficient assessment in the absence of other

evidence that Plaintiff's obesity alone was disabling.  *See Howard v. Barnhart*, 379 F.3d 945,

948 (10th Cir. 2004) (rejecting a claimant's argument that the ALJ did not properly account for

her obesity, where the ALJ discussed the "possible ramifications of her obesity" when he

assessed her impairments, and because the claimant did "not discuss or cite to medical evidence

about other areas . . . impacted by her obesity"); *Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir.

2015) (rejecting a claimant's attack on the ALJ's assessment of her obesity because she

"point[ed] to no medical evidence indicating that her obesity resulted in functional limitations");

*Palencia-Orellana v. Saul*, No. 19-CV-563, 2020 WL 1676918, at *12 (D.N.M. Apr. 5, 2020)

(rejecting a claimant's argument that the ALJ did not adequately discuss his obesity, finding it

"[c]ritical[]" that he did "not discuss nor cite any evidence that would support a finding that his

obesity contributes to limitations beyond those included in the RFC").

For these reasons, the Court is not persuaded by the arguments advanced by Plaintiff that

her severe and non-severe impairments, as well as ALJ Fellabaum's discussion of her obesity,

undermine ALJ Fellabaum's decision.  The Court is therefore satisfied that ALJ Fellabaum's

decision is supported by substantial evidence.

The Court now turns to Plaintiff's contention that ALJ Fellabaum should have considered

finding a closed period of disability.  Doc. 28 at 10, 15.

5.    *Legal Standard for Closed Period of Disability*

 "A closed period of disability is the period of disability with a definite beginning date

and a definite ending date that the adjudicator establishes at the time of adjudication."  POMS DI

25510.001(A); *see also Steven S. v. Kijakazi*, No. 21-CV-100, 2022 WL 1719679, at *4 (D. Utah

May 27, 2022) ("A closed period is a case 'in which a disability claimant is found to have been

disabled for a finite period of time,' but whose condition has medically improved to allow them
to return to work." (quoting *Shepherd v. Apfel*, 184 F.3d 1196, 1198 (10th Cir. 1999))). "To
establish a closed period of disability, the evidence must show: the onset date . . . , the duration
requirement is met . . . , and the date disability ceased." POMS DI 25510.001(B)(1).

      6.     *ALJ Fellabaum Did Not Err by Failing to Consider Finding a Closed Period of
              Disability*

      Plaintiff does not demonstrate how the requirements for finding a closed period of
disability were satisfied, and puzzlingly, asks the Court to conclude that the ALJ erred by failing
to consider finding a closed period that ended sometime following "the recovery time" for her
posterior spinal fusion. Doc. 28 at 9. Again, a claimant seeking DIB under Title II of the Act
must establish that she was under disability between her alleged onset date and the date last
insured. *Dominguez*, 55 F. Supp. 2d at 1179 n. 4. Plaintiff's posterior spinal fusion was
performed on February 27, 2019, and her date last insured was March 31, 2019. Tr. 17, 1622.
According to Plaintiff's medical records, the time it would take for her to recover from this
operation would extend beyond March 31, 2019. Tr. 1626.

      In any event, there is no indication that Plaintiff sought a finding of a closed period of
disability below. As mentioned above, ALJ Fellabaum considered evidence of Plaintiff's
condition after she received her posterior spinal fusion. Tr. 26. While this evidence showed
Plaintiff improving, there is no basis for the Court to conclude that this factored into ALJ
Fellabaum's overall assessment of whether Plaintiff was disabled between her alleged onset date
and the date she was last insured—the only time period at issue here. Tr. 26 (citing Tr. 1633-35).
If anything, this fact seems to undercut Plaintiff's position, because the medical records from the
Plaintiff's recovery time—which presumably could have been expected to surpass March 31,
2019—showing Plaintiff's improvement, without further explanation, seem incongruous with a

closed period of disability, where a finite end date is required.  *See Steven S.*, 2022 WL 1719679, at *4.  The Court fails to see how that finite end date could reasonably fall in a timeframe of documented improvement.  This observation notwithstanding, ALJ Fellabaum's conclusion that Plaintiff was not disabled during that time period indicates that she was not entitled to closed period of disability during any period of time therein.  *See Asberry v. Kijakazi*, No. 21-CV-396, 2022 WL 1462273, at *10 (W.D. Okla. May 9, 2022) ("Implicit in the ALJ's conclusion that [claimant] was not disabled during the relevant time period is that [claimant] was not entitled to a closed period of disability at any time during that same period."); *Lykins v. Colvin*, No. 14-CV-248, 2015 WL 12915595, at *5 (N.D. Okla. July 13, 2015) (rejecting a claimant's argument that the ALJ should have considered a closed period of disability where the claimant did not request that the ALJ consider a closed period of disability and the ALJ's conclusion that the claimant was not disabled was supported by substantial evidence).

Finally, the Court turns to Plaintiff's contention regarding the additional evidence she submitted for consideration by the Appeals Council.

7.      *Legal Standard for Consideration of Additional Evidence by the Appeals Council*

Unlike Plaintiff's preceding arguments in her Motion to Remand, all of which are rooted in ALJ Fellabaum's disability decision, whether additional evidence qualifies for consideration by the Appeals Council is a question of law, which the Court reviews de novo.  *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011).  Additional evidence will only be considered by the Appeals Council if it "is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).  "New" evidence "is not duplicative or cumulative," and evidence is "material . . . if there is a reasonable possibility

that it would have changed the outcome." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir.

2003) (alteration, internal quotation marks, and citation omitted).  Within these factors is "'[a]n

implicit requirement that the new evidence pertain to the time period for which benefits are

sought.'"  *Romero v. Colvin*, No. 12-CV-1696, 2014 WL 1097270, at *4 (D. Colo. Mar. 20,

2014) (quoting *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997)).  Evidence that fails to

satisfy these factors "plays no further role in judicial review of the Commissioner's decision."

*Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004).

> 8.   *The Appeals Council Properly Disregarded Plaintiff's Additional Evidence*

Plaintiff does not explicitly argue that the Appeals Council erred by failing to consider

additional evidence she presented with her request for review.  *See* Doc. 28 at 17-18.  However,

the Court interprets her statement that she "submitted new evidence consisting of additional

medical records" as an attack of the Appeals Council refusal to consider the treatment records

she submitted alongside her request for review.  Doc. 28 at 17.  The Appeals Council rejected the

contents of the additional evidence for two reasons.  Tr. 2.  First, a portion of the additional

evidence fell outside of the period of time at issue.  Tr. 2.  Next, the Appeals Council concluded

that the remainder of the additional evidence did "not show a reasonable probability that it would

change the outcome of the decision."  Tr. 2.  Plaintiff's argument relates only to the former.

The evidence that the Appeals Council did not consider because it fell outside the time

period at issue is a report from Certified Nurse Practitioner ("CNP") Carolyn Vavrecan prepared

on October 1, 2020.  Tr. 2 (citing Tr. 97-99).  Therein, NP Vavrecan noted that she had cared for

Plaintiff "between 2017 and 2018" for "severe depression and anxiety," among other things.  Tr.

97.  Plaintiff contends that ALJ Fellabaum did not consider her anxiety because no evidence of

anxiety existed prior to her date last insured.  Doc. 28 at 17.  She claims, however, that the

additional evidence outlined above "cure[s]" this problem.  Doc. 28 at 17.  The Court disagrees with the Appeals Council that this additional evidence falls outside the relevant time period, but concludes that it is not material.

While the report from CNP Vavrecan was prepared on October 1, 2020, the list of conditions therein for which she treated Plaintiff relates to 2017-2018, which is within the relevant time period here.  Tr. 87; *see Threet*, 353 F.3d at 1191 (noting that "timeliness is no problem" when the additional "evidence relates to the period before the ALJ's decision").  However it is the Plaintiff's burden to establish as fact that she suffers from a medically determinable impairment.  *See Hayden v. Colvin*, No. 15-CV-318, 2016 WL 8230653, at *4 (D.N.M. May 12, 2016).  Bearing this principle in mind, the Court fails to see how there is a reasonable probability that had ALJ Fellabaum been privy to this evidence, her decision would have changed.  As Plaintiff notes, no medical evidence in the record before ALJ Fellabaum substantiated the presence of anxiety, and this fact guided ALJ Fellabaum's decision-making process.  Doc. 28 at 17; Tr. 20.  In the Court's view, the listing of anxiety by CNP Vavrecan, without more, is inadequate to make this evidence material, especially because there was evidence in the record before ALJ Fellabaum of the other conditions for which CNP Vacrecan reported providing treatment to Plaintiff during the relevant time period.  *Compare* Tr. 97 (listing the conditions for which Plaintiff was receiving treatment from CNP Vavrecan between 2017 and 2018), *with* Tr. 695-98 (exhibit cited in ALJ Fellabaum's decision (Tr. 19) listing the conditions for which Plaintiff was receiving treatment in 2017).  Therefore, the Court concludes that the Appeals Council did not err in not exhibiting this evidence.  In light of the foregoing, the Court does not consider this evidence, and rejects Plaintiff's argument.

## IV. CONCLUSION

Plaintiff's Motion to Reinstate and her Motion to Remand are hereby **DENIED.**

Therefore, the Commissioner's final decision is **AFFIRMED.**

**IT IS SO ORDERED.**

**JOHN F. ROBBENHAAR**
United States Magistrate Judge,
Presiding by Consent